IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NILDA C. MARUGAME,　　　　　)　　CIVIL NO. 11-00710 LEK-BMK
　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
JANET NAPOLITANO, SECRETARY )
DEPARTMENT OF HOMELAND　　　 )
SECURITY; DEPARTMENT OF　　  )
HOMELAND SECURITY,　　　　　 )
　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　 )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT**

Before the Court is Defendant Janet Napolitano's[1]

("Defendant") Motion for Dismissal and Summary Judgment

("Motion"), filed on April 2, 2013. [Dkt. no. 31.] Plaintiff

Nilda C. Marugame ("Plaintiff") filed her memorandum in

opposition on July 5, 2013, and Defendant filed her reply on

July 15, 2013. [Dkt. nos. 37, 39.] This matter came on for

hearing on July 29, 2013. Appearing on behalf of Defendant was

Assistant United States Attorney Thomas Helper, and appearing on

behalf of Plaintiff was Shawn Luiz, Esq. After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Defendant's Motion is HEREBY

GRANTED IN PART AND DENIED IN PART for the reasons set forth

_____

[1] Janet Napolitano is named in her capacity as the Secretary
of the Department of Homeland Security.

below.  Specifically, the Motion is DENIED WITHOUT PREJUDICE as
to the request for dismissal, and is DENIED as to the sexual
harassment/hostile work environment claims based on
Christopher Pheasant's conduct, and as to the retaliation claim
based on the September 4, 2009 statement.  The Motion is GRANTED
as to the gender discrimination claim and the retaliation claim
based on the three-day suspension.

<u>**BACKGROUND**</u>

Plaintiff filed her Complaint in the instant action on
November 23, 2011.  During all times relevant to the Complaint,
Plaintiff was employed by the Transportation Security
Administration ("TSA") as a Transportation Security Officer
("TSO") at the Lihue International Airport.  According to the
Complaint, a Transportation Security Investigator ("TSI")
sexually assaulted Plaintiff on August 26, 2009.  Further, on
September 4, 2009, the Federal Security Director and the
Assistant Federal Security Director coerced Plaintiff into
signing a document denying that the TSI sexually harassed her.
On December 14, 2009, the Transportation Security Manager
suspended Plaintiff for three days.  [Complaint at ¶¶ 4, 8.]
Plaintiff alleges claims of "unlawful employment practices on the
basis of hostile work environment, sexual harassment and
discriminat[ion] against her on the basis of sex (female) and
reprisal/retaliation (opposing discrimination by

2

management) . . . ."  [Id. at ¶ 1.]  Plaintiff brings this action

pursuant to Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a.  [Id.]

## I.   Motion

In the instant Motion, Defendant argues that

Plaintiff's Complaint identifies three acts of alleged

discrimination or retaliation: the alleged assault on August 26,

2009; the September 4, 2009 incident in which Plaintiff was

allegedly forced to sign a statement saying that the TSI did not

sexually harass her; and the three-day suspension, which was

effective December 14, 2009.  [Mem. in Supp. of Motion at 1.]

Defendant first argues that this Court should dismiss

Plaintiff's sexual harassment claim because Plaintiff failed to

contact an Equal Employment Opportunity ("EEO") counselor within

forty five days of the last incident of alleged harassment, as

required by 29 C.F.R. § 1614.105(a)(1).  [Id. at 3-4.]  Plaintiff

did not contact an EEO counselor until January 25, 2010.  [Def.'s

Concise Statement of Facts in Supp. of Motion, filed 4/2/13 (dkt.

no. 32) ("Def.'s CSOF"), Decl. of Thomas A. Helper ("Helper

Decl."), Exh. 1 (Pltf.'s Formal Complaint of Discrimination) at

2, Item 19.]  Defendant argues that, because Plaintiff cannot

establish waiver, estoppel, or equitable tolling, her to failure

contact an EEO counselor within forty five days is grounds for

dismissal of any claims prior to December 11, 2009.  Defendant

therefore urges this Court to dismiss Plaintiff's claims based on the August 26, 2009 incident and the September 4, 2009 incident. [Mem. in Supp. of Motion at 4 (citing 29 C.F.R. § 1614.107(a)(2)).]

### A.   Alleged Sexual Assault on August 26, 2009

Defendant next argues that, even if this Court does not dismiss Plaintiff's sexual harassment claim, Defendant is entitled to summary judgment.  Defendant asserts that, because Christopher Pheasant, the TSI who allegedly assaulted Plaintiff, had no supervisory authority over Plaintiff,[2] this Court must apply the standard for co-worker harassment.  Under the co-worker harassment standard, the employer is only liable if it knew or should have known about the harassment and either failed to stop it or failed to adequately address it.  Thus, an employer cannot be liable for conduct of which it was not aware.  [Id. at 5-7.]

Defendant presented evidence that Plaintiff first informed TSA managers of the August 26, 2009 alleged assault on September 16, 2009.  [Def.'s CSOF, Decl. of Betty Jane Uegawa

---

[2] Sharlene Mata is the Federal Security Director at the Lihue Airport.  She is the highest ranking TSA official at that location.  [Def.'s CSOF, Decl. of Sharlene Mata ("Mata Decl.") at ¶¶ 1-2.]  She states that, during the relevant time period, Pheasant did not manage, supervise, evaluate, or discipline Plaintiff, nor did he control Plaintiff's duties or schedule. [Id. at ¶ 5.]

("Uegawa Decl.") at ¶ 6;[3] Mata Decl. at ¶ 7.]   Plaintiff may
argue that she tried to report the alleged assault on either
September 1, 2009 or August 31, 2009, but Defendant argues that
"[t]here is no need for the court to choose from among these
dates, because the only alleged incident of harassment occurred
earlier" and there were no further alleged incidents of
harassment by Pheasant after Plaintiff's report.  [Mem. in Supp.
of Motion at 7.]   Thus, Defendant seeks summary judgment because
no harassment occurred after TSA was on notice of the alleged
harassment by Pheasant.  [Id. at 7-8.]

        Defendant next argues that, even assuming, *arguendo*,
that Pheasant is considered Plaintiff's supervisor, Defendant is
still entitled to summary judgment.  Defendant asserts that,
because there was no tangible employment action taken against
Plaintiff, Defendant can rebut Plaintiff's prima facie case of
supervisor harassment with the affirmative defense set forth in
Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998), and
Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 759 (1998).
Pursuant to Faragher and Ellerth, Defendant cannot be liable if:
1) TSA exercised reasonable care to prevent sexual harassment and
to correct promptly any sexually harassing behavior; and 2)
Plaintiff unreasonably failed to take advantage of TSA's

---

        [3] Betty Jane Uegawa is the Assistant Federal Security
Director at the Lihue Airport.  She is the second highest ranking
TSA official at that location.  [Uegawa Decl. at ¶¶ 1-2.]

prevention programs or corrective opportunities. [Id. at 8.]

TSA has a harassment prevention program, and Plaintiff received training in that program. [Uegawa Decl. at ¶ 3.] Defendant argues that TSA acted promptly upon Plaintiff's allegation that Pheasant assaulted her and, prior to that point, Plaintiff failed to report any questionable treatment by Pheasant. Defendant therefore could not have intervened in their relationship. [Mem. in Supp. of Motion at 8-9.] According to Mata, Plaintiff reported her affair with Pheasant to Mata and Uegawa on September 1, 2009. Both Plaintiff and Pheasant stated it was consensual and that it had ended the day before. Mata asked them not to contact each other. [Mata Decl. at ¶ 4.] After Plaintiff made her complaint on September 16, 2009 about the alleged assault, TSA promptly investigated her claims. Although TSA did not sustain Plaintiff's complaint, it informed Pheasant of his impending discipline for related conduct. Pheasant resigned instead. [Id. at ¶¶ 7, 10.] Defendant therefore argues that, even if Pheasant was Plaintiff's supervisor, Defendant is entitled to summary judgment based on the Faragher/Ellerth defense. [Mem. in Supp. of Motion at 9.]

## B.  **Alleged Coerced Statement on September 4, 2009**

Defendant argues that Plaintiff's claim regarding the allegedly coerced statement is either a gender discrimination claim or a retaliation claim. Both claims require an adverse

personnel action, but a different analysis applies to determine whether there was an adverse personnel action for a gender discrimination claim as opposed to a retaliation claim. [Id. at 9-10.]

Defendant interprets Plaintiff's Complaint as alleging that: Plaintiff's September 1, 2009 attempt to report the sexual assault was an act of opposition to sexual harassment; on September 4, 2009, Uegawa retaliated against her by coercing her to sign a statement denying any assault and stating that Plaintiff's relationship with Pheasant was consensual ("the September 4 Statement"); and the September 4 Statement led to TSA's failure to properly investigate Plaintiff's report. Defendant argues that Plaintiff cannot establish that the September 4 Statement was an adverse personnel action for purposes of a gender discrimination claim because it did not have a material effect on her compensation, terms, conditions, or privileges of her employment. [Id. at 11-12.] Further, even if a defective investigation could support a Title VII claim, Defendant argues that Plaintiff "will be unable to show that the allegedly compelled statement made any difference in later developments." [Id. at 13.] Plaintiff made a statement on October 26, 2009 in the course of the internal investigation by TSA's Office of Inspections ("OI" and "the OI Statement"). The OI Statement concedes that Plaintiff and Pheasant had consensual

sexual encounters, including one at Pheasant's home four days
after the alleged assault. [Def.'s CSOF, Decl. of Jenis Rideb
("Rideb Decl."), Exh. 4 (OI Statement).] Defendant argues that
Plaintiff has not claimed that the OI Statement was coerced or
inaccurate. Insofar as Plaintiff cannot establish that the
alleged coercion of the September 4 Statement was an adverse
personnel action, Defendant urges this Court to grant summary
judgment to Defendant as to Plaintiff's claim based on the
alleged coercion of the September 4 Statement. [Mem. in Supp. of
Motion at 13-14.]

### C.  <u>**Three-day Suspension**</u>

For purposes of the instant Motion, Defendant assumes
that Plaintiff can establish a prima facie case for her
retaliation claim based upon the three-day suspension in December
2009. Defendant argues that TSA had a legitimate, non-
discriminatory reason for the suspension - Plaintiff's misuse of
government property in the course of her affair with Pheasant.
[<u>Id.</u> at 15.]

Transportation Security Manager Jenis Rideb made the
decision to suspend Plaintiff. Rideb was not involved in, and
had little knowledge about, the disputes regarding Plaintiff and
Pheasant. Rideb reviewed the OI Statement, but not Plaintiff's
September 4 Statement. He noted that the OI Statement indicated
that Plaintiff and Pheasant had a number of sexual encounters in

Pheasant's office.  On December 9, 2009, Rideb informed Plaintiff that he was considering suspending her for misuse of government property, and he gave her the opportunity to respond to the charges.  [Rideb Decl. at ¶¶ 3-4.]  Plaintiff gave two statements in response.  They essentially stated that she felt compelled to go to Pheasant's office and to comply with his wishes because of his position.  [Id., Exh. 6 (handwritten statement by Plaintiff dated 12/9/09), Exh. 7 (type written statement by Plaintiff dated 12/9/09).]

Rideb issued a decision letter dated December 11, 2009. He emphasized that Pheasant was not Plaintiff's supervisor and, even if Pheasant asked Plaintiff to engage in sexual acts, she was not forced to comply.  Rideb concluded that, based on the OI Statement, Pheasant's statement, and other evidence, Plaintiff was a willing participant in the relationship.  He also noted that Plaintiff was aware of the TSA policy prohibiting the misuse of government property.  [Id., Exh. 8 (decision letter to Plaintiff).]

Defendant argues that Plaintiff will not be able to prove that Rideb's characterization of the OI Statement was motivated by retaliatory animus.  In order to prevail on her retaliation claim, Plaintiff will have to prove that Rideb did not honestly believe that Plaintiff's acts were consensual. Defendant argues that Plaintiff has not identified a genuine

9

issue of fact as to that question.  [Mem. in Supp. of Motion at 17-18.]  Defendant points to evidence that TSA also imposed a three-day suspension on TSO Darla Cox for misusing government property in the course of her affair with Pheasant.  Cox had not engaged in any protected activity.  [Rideb Decl., Exh. 9 (memo dated 12/13/09 to Cox from Rideb notifying her of three-day suspension).]  Defendant also emphasizes that three other investigations (the state court's findings related to Plaintiff's temporary restraining order against Pheasant, the Kauai Police Department's ("KPD") investigation into Plaintiff's sexual assault allegations, and the OI investigation) concluded that Plaintiff had a consensual affair with Pheasant.  [Def.'s CSOF Nos. 9-11 (citing Mata Decl., Exh. 3 (police incident report); Exh. 10 (Temporary Restraining Order in Marugame v. Pheasant); Helper Decl., Exh. 11 (excerpts of 10/12/09 hrg. trans. in Marugame v. Pheasant); Mata Decl. at ¶¶ 8-9; Uegawa Decl. at ¶ 7).]  Defendant therefore argues that this Court should grant summary judgment to Defendant on Plaintiff's retaliation claim because Plaintiff will not be able to establish that TSA's stated, non-retaliatory reason for the suspension was pretext. [Mem. in Supp. of Motion at 18-19.]

## II.  **Memorandum in Opposition**

According to Plaintiff, in June 2009, Pheasant began following her during her daily routine.  His attention made her

uncomfortable, but she felt that she had to submit to his authority because he was a staff member.  [Pltf.'s Concise Statement of Facts, filed 7/5/13 (dkt. no. 38) ("Pltf.'s CSOF"), Decl. of Nilda C. Marugame ("Pltf. Decl.") at ¶ 2.]  Plaintiff argues that managers, like Pheasant,[4] had authority over her and the other screeners.  Plaintiff states that there were assignments which she had three times a week, both before and after the assault, in which Pheasant was her supervisor.  In fact, he sometimes worked directly with the team on those assignments.  According to Plaintiff, Pheasant was able to follow her around because he knew where the team was and what it would be doing at any given time, and he could go where ever he wanted to go on airport property.  [Id. at ¶ 17.]  Plaintiff admits that Pheasant's efforts to follow her, converse with her, and impress her eventually led to a relationship, which she was "okay" with at first because it only involved talking and did not involve sexual activities.  [Id. at ¶ 2.]

Pheasant asked Plaintiff to go to his office on several occasions, but she refused.  The first time she complied with his request, he asked her to unbutton her shirt and pants.  Plaintiff did so at first, but stopped.  Plaintiff felt scared and

---

[4] Desi Sasil testified that Pheasant was the lead inspector, which was a management position with supervision over one employee, Kendall Lopez.  [Pltf.'s CSOF, Decl. of Shawn A. Luiz ("Luiz Decl."), Exh. E (excerpts of 10/19/12 depo. trans. of Desi W. Sasil) ("Sasil Depo.") at 24-25.]

intimidated, and she still felt that she had to submit to his
authority as a higher ranking TSA employee.  She thought that no
one would believe her if she complained about his behavior.
During another incident in Pheasant's office he "squeezed [her]
two breast together really hard[,]" which shocked her and was
humiliating and degrading.  [Id.]

Plaintiff states that Pheasant sexually assaulted her
on August 26, 2009, in the perimeter area of the Lihue Airport.
Plaintiff was afraid of possible retaliation if she reported the
assault, but she decided to come forward after Pheasant told her
that he had been called to Mata's office to answer questions
about his relationship with TSI Kendall Lopez and rumors about
his relationship with Cox.  Plaintiff believed Pheasant was
pursuing those women, and she did not want him to victimize them
like he victimized her.  [Id. at ¶¶ 3-4.]

Plaintiff went to see Uegawa on September 1, 2009.
Plaintiff told Uegawa that she and Pheasant "were seeing each
other[,]" but she wanted to report what he did to her so that it
would not happen to anyone else and so that Pheasant would get
was he deserved under the law.  [Id. at ¶ 5.]  Uegawa asked Mata
to join them in Uegawa's office.  Mata asked Plaintiff if she
felt as if she had been harassed and if Pheasant's conduct was
unwelcome.  Plaintiff believed that Mata was only asking those
questions "for the record" and that Mata had already made up her

12

mind about what happened between Plaintiff and Pheasant.  [Id.]
When Plaintiff said Pheasant had been following her, Mata
responded that Pheasant was an inspector and could go wherever he
wanted.  Mata also repeatedly stated that everything between
Plaintiff and Pheasant was consensual.  Plaintiff felt that she
could not continue with her report because of Mata's reaction.
Mata and Uegawa instructed Plaintiff to write a statement and to
call the Employee Assistance Program ("EAP") number for
assistance.  Neither of them directed Plaintiff to contact an EEO
counselor or gave her any EEO forms to complete.  [Id.]

From September 1 to September 4, 2009, Mata and Uegawa
continued to insist that Plaintiff write a statement that the
alleged sexual harassment by Pheasant was consensual.  On
September 4, 2009, Uegawa called Plaintiff to her office and
presented her with a pre-written statement denying any sexual
harassment.  Plaintiff refused to sign the document, and she
became hysterical when Mata suggested that Plaintiff was in love
with Pheasant.  Plaintiff eventually signed the statement because
they told her it was insubordination if she refused.  [Id. at
¶ 6.]  Plaintiff argues that TSA treated her this way in spite of
having knowledge that Pheasant was involved with another married
TSO, Darla Cox, and that he had been involved in a similar
situation in Sacramento.  [Mem. in Opp. at 4 (citing Luiz Decl.,
Exh. Q (excerpts of 11/14/12 depo. trans. of Kim M. Ryan-

Fernandez) ("Ryan-Fernandez Depo.")).[5]]

A few days after signing the September 4 Statement, Plaintiff "contacted EEO by calling . . . 571-227-1438." [Pltf. Decl. at ¶ 7.] She called at least three times and left messages stating that she wanted to file a complaint, but no one returned her call. She also called the Office of Civil Rights and Liberties, but no one returned her call. On an unspecified date, Plaintiff spoke to Michael Chen at the Elimination of Sexual Harassment Office. She told him about the assault and about being forced to sign the September 4 Statement. Chen said that, because Plaintiff had made a report with the local police, OI would conduct an independent investigation of the matter after the police investigation was over. Chen asked if TSA had separated Plaintiff from Pheasant or made their work schedules different. Plaintiff said that TSA had proposed that, but she could not agree to the new schedule because she could not work nights. The prosecutor's office later informed Plaintiff that they were not going to prosecute Pheasant. [Id. at ¶¶ 7-8.]

Plaintiff took three weeks of sick leave because she was traumatized by the assault and by having to return to the scene of the assault in the course of her duties. [Id. at ¶ 10.]

---

[5] This Court notes that the excerpts of Ryan-Fernandez's deposition testimony that Plaintiff provided do not support Plaintiff's argument that TSA knew or should have known that Pheasant was likely to sexually assault a co-worker. See infra Section II.A.2.a.

On October 16, 2009, the day after Plaintiff returned to work, she met with Uegawa, Cox, and a TSA human resources specialist, and they accused her of spreading rumors that Pheasant had raped Cox. Plaintiff states that she was subjected to harassment "[a]lmost every week" leading up to her suspension on December 9, 2009. [Id. at ¶ 11.] Plaintiff believes that TSA was "really trying to provoke [her] into breaking down so they can get rid of [her.]" [Id.]

On October 26, 2009, Plaintiff wrote the OI Statement in the course of the OI investigation. According to Plaintiff, when she wrote the OI Statement, she was at the OI office from 8:00 a.m. to 9:00 p.m., without any food. Although she asked to leave, the special agents told her she had to stay until she completed her statement. She could "hardly function" because of the flashbacks. [Id. at ¶ 13.] On October 28, 2009, Plaintiff was called to the OI office to hear the results of the investigation. One of the special agents insisted that Plaintiff was lying, and he warned her that she could go to jail for lying under oath, but another agent said that he believed the assault took place. [Id. at ¶ 14.]

On December 9, 2009, Rideb told Plaintiff that she would be disciplined because she used a government office to conduct her affair with Pheasant. Rideb insisted that Plaintiff was a willing participant and that she was not compelled to do

what she did with Pheasant.  Plaintiff believes that Mata and
Uegawa directed Rideb to suspend her and to threaten her with
termination.  [Id. at ¶ 15.]  Rideb imposed the three-day
suspension from December 14 to December 16, 2009.  [Id. at ¶ 18.]
In addition to the suspension, Plaintiff's performance ratings
decreased dramatically, she was moved from the day shift to the
evening shift, and her hours were reduced.  Plaintiff believes
that Mata and Uegawa, who were angry with her and never supported
her complaint about Pheasant, directed these actions to induce
her to quit.  [Id. at ¶¶ 19-21.]

Plaintiff argues that she made a good faith effort to
report the August 26, 2009 assault by reporting it to Uegawa and
Mata, who merely referred her to the EAP instead of directing her
to an EEO counselor.  Plaintiff also tried to contact the EEO
office in September 2009, but did not get a response.  [Mem. in
Opp. at 4, 7.]  Plaintiff argues that Defendant should be
estopped from asserting that she did not comply with exhaustion
requirements because TSA initially mislead her into believing
that they were going to process her complaint and then later that
TSA could not do anything until the police investigation was
completed.  Plaintiff continued to pursue her claims after the
police investigation was over.  [Id. at 14.]

According to Plaintiff, it is undisputed that all of
the information used to support her suspension came from the

16

investigation into her report of the August 26, 2009 assault.
[Id. at 15.]  She also argues that Rideb was aware of her
allegation of sexual assault and that Mata had expressed that
whistleblowers receive too much protection.  In addition, Rideb
did not want to discipline Plaintiff, but Mata and/or Uegawa
ordered him to do so.  [Id. (citing Sasil Depo. at 36, 81, 83-
85); id. at 19 (citing Sasil Depo.; Luiz Decl., Exh. D (excerpts
of 9/12/12 depo. trans. of Jenis Rideb) ("Rideb Depo.")).]  Based
on such testimony, Plaintiff argues that she has established a
prima facie case of retaliation and that there are issues of fact
which warrant denial of the Motion.  [Id. at 16.]

As to her sexual harassment claims, Plaintiff
emphasizes that TSA allowed Pheasant to resign without any
discipline or any findings of misconduct, but Plaintiff and Cox,
Pheasant's female victims, were disciplined.  [Id. at 16-17
(citing Pltf.'s CSOF, Decl. of Robert C. Marvit, M.D.).]  Thus,
Plaintiff argues that TSA is liable because it failed to take any
prompt, remedial action to stop the harassment.  [Id. at 17.]

Plaintiff therefore urges this Court to deny the
Motion.

III. **Reply**

First, as to Plaintiff's argument that reporting the
assault to TSA managers Mata and Uegawa satisfied the EEO
counselor requirement, Defendant argues the Ninth Circuit has

17

held that a report to a manager does not constitute contact with an EEO counselor.  Further, Plaintiff has not stated that she told Mata or Uegawa that she wanted to file an EEO complaint. [Reply at 2.]

Defendant, however, acknowledges that Plaintiff's testimony that she tried to contact an EEO counselor in September 2009 raises an issue of fact as to whether the forty-five-day deadline should be equitably tolled.  Defendant therefore states that this Court should deny the motion to dismiss without prejudice.  If Plaintiff's claims survive summary judgment, Defendant may seek a Fed. R. Civ. P. 43(c) evidentiary hearing on the tolling issue.  Defendant also emphasizes that Plaintiff has not alleged that 1) anyone at the Lihue TSA knew about her calls to the EEO or 2) that she was retaliated against because of the calls.  [Id. at 2-3 & n.1.]

As to the issue of whether Pheasant was Plaintiff's supervisor or her co-worker, Defendant argues that the United States Supreme Court's recent decision in Vance v. Ball State University, 133 S. Ct. 2434, 2447-48, 2454 (2013), requires a finding that Pheasant was Plaintiff's co-worker because Plaintiff has only produced evidence that Pheasant had the title of manager and that, in limited circumstances, he might tell a screener what to do.  This is insufficient under Vance; Plaintiff has not identified any evidence to dispute Defendant's evidence that

18

Pheasant did not have any authority to make tangible employment decisions about Plaintiff.  [Id. at 4-5.]

Defendant argues that Plaintiff has not presented any evidence that TSA knew, or should have known, that Pheasant might harass a co-worker prior to the August 26, 2009 alleged assault. The testimony that Pheasant and Cox engaged in mutual flirtation does not constitute conduct which would put TSA on notice that Pheasant might commit sex assault.  Further, Plaintiff has not presented any evidence that Pheasant's supervisors knew about his relationship with Cox or that Kim Ryan-Fernandez had a duty to report the relationship after she saw Pheasant and Cox flirting over lunch.  Defendant also argues that the opinion of Robert C. Marvit, M.D., does not support Plaintiff's case because he gives opinions outside of his area of expertise (psychiatry), including human relations, morality, and business management.  Further, he does not provide sources for his premises and conclusions, and he purports to diagnose Pheasant based solely on the litigation record.  Dr. Marvit's opinion is not relevant to the critical issue of whether TSA was on notice that Pheasant might harass a co-worker.  Even if Dr. Marvit intended to give an opinion on that issue, it would be inadmissible.  Insofar as Plaintiff has not identified any evidence to support her claim that TSA was negligent in failing to prevent the assault, Defendant argues that Defendant is entitled to summary judgment on Plaintiff's

sexual harassment claims.  [<u>Id.</u> at 5-7.]

As to Plaintiff's claim that she was coerced into signing the September 4 Statement, Defendant argues that Plaintiff's memorandum in opposition does not respond to Defendant's evidence that TSA accepted and investigated her complaint against Pheasant, nor does Plaintiff's memorandum respond to Defendant's argument that the Ninth Circuit has found that investigations with far more serious alleged flaws did not constitute adverse personnel actions.  Defendant seeks summary judgment as to Plaintiff's claims based upon the September 4 Statement.  [<u>Id.</u> at 7-8.]

As to Plaintiff's retaliation claim based upon her suspension, Defendant emphasizes that the United States Supreme Court's recent decision in <u>University of Texas Southwestern Medical Center v. Nassar</u>, 133 S. Ct. 2517 (2013), rejected the "motivating factor" test that was the law in the Ninth Circuit. The Supreme Court held that, to prevail on a retaliation claim, an employee must establish "but-for" causation.  [<u>Id.</u> at 8-9.] Defendant argues that Plaintiff has not identified any evidence that would establish but-for causation.  Plaintiff points to Sasil's testimony that Rideb said that Mata directed Rideb to suspend Plaintiff, but, even if this is true, it does not prove that the suspension was retaliatory.  Plaintiff has not identified any evidence that Mata directed the suspension because

20

of Plaintiff's complaint that Pheasant assaulted her.  In fact, Sasil also testified that Mata wanted both Plaintiff and Cox to be suspended, and Mata was motivated by Plaintiff's and Cox's "meltdowns" on the job.  [Id. at 9-10 (citing Sasil Depo. at 54-55, 163).]  Defendant points out that Plaintiff did not respond either to the reasons for the suspension set out in the decision letter or to the three investigations which concluded the relationship between Plaintiff and Pheasant was consensual. Defendant argues that the decision letter relied upon Plaintiff's OI Statement, which contained ample evidence that Plaintiff and Pheasant's relationship was consensual.  For example, it described: occasions when they would kiss in a TSA vehicle; Plaintiff's offer to purchase a $500 watch for Pheasant while she was on a trip; Plaintiff's frequent calls to Pheasant when she was on break or when she finished her shift; and an August 18, 2009 encounter when Plaintiff told Pheasant she loved him.  [Id. at 10-11 & n.4.]  Defendant also disagrees with Plaintiff's argument that TSA treated her more harshly than Pheasant.  Mata told Pheasant that he faced serious discipline for his actions, and he resigned instead of going through the process.  [Id. at 12 & nn.5-6.]  Thus, Plaintiff cannot meet the "but-for" causation burden as to the suspension.

Finally, Defendant urges this Court to disregard Plaintiff's allegations about changes to her shift and work hours

and her low performance ratings because Plaintiff did not include such allegations in her Complaint.  [Id. at 13.]  Defendant argues that those claims are not properly before this Court, and this Court should grant summary judgment to Defendant on all of Plaintiff's claims that are properly before this Court.

## DISCUSSION

### I.   Motion to Dismiss

29 C.F.R. § 1614.105(a)(1) requires a federal employee who believes that she has been subjected to gender discrimination in the workplace to initiate contact with an EEO counselor within forty-five days of the alleged discrimination.  The forty-five day period, however, is "subject to waiver, estoppel and equitable tolling."  See 29 C.F.R. § 1614.604(c).  If waiver, estoppel or equitable tolling does not apply, failure to comply with § 1614.105(a)(1) is "fatal to a federal employee's discrimination claim in federal court."  Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted).

Defendant acknowledges that, in light of Plaintiff's declaration stating that she attempted to contact an EEO counselor in September 2009, there is an issue of fact as to whether the forty-five-day period should be equitably tolled. Defendant therefore asks this Court to deny the portion of the Motion seeking dismissal pursuant to § 1614.105(a)(1) without

prejudice.  At the hearing on the Motion, Plaintiff argued that the denial should be with prejudice because there is already enough evidence in the record to support a finding that equitable tolling applies.  First, as to Plaintiff's argument that reporting the alleged assault to Mata and Uegawa satisfied the § 1614.105(a)(1) requirement, "there is no basis in law to suggest that an employee's complaints to her supervisors satisfy the requirement that the aggrieved employee seek EEO counseling prior to filing a formal complaint or suing in court."  <u>Johnson v. Henderson</u>, 314 F.3d 409, 415 (9th Cir. 2002).  As to Plaintiff's declaration stating that she attempted to call the EEO in September 2009, Defendant is entitled to conduct discovery on this issue, and therefore this Court cannot find, based on the current record, that the forty-five-day requirement in § 1614.105(a)(1) was equitably tolled.

The portion of the Motion seeking dismissal pursuant to § 1614.105(a)(1) is therefore DENIED WITHOUT PREJUDICE.

## II.  <u>Summary Judgment</u>

Defendant also argues that she is entitled to summary judgment on all of Plaintiff's claims.

### A.  <u>Alleged Sexual Assaults</u>

Plaintiff has brought a hostile work environment and sexual harassment claim based on the August 26, 2009 incident in which Pheasant allegedly sexually assaulted her.  [Complaint at

23

¶ 4.]   In addition, although not the model of clarity, the
Complaint also alleges that there were other sexual assaults
which she attempted to complain about and which TSA failed to
adequately to.  [Id. at ¶¶ 9, 11, 13.]

     First, this Court must determine whether Plaintiff has
raised a genuine issue of material fact as to whether Pheasant
subjected Plaintiff to a hostile work environment and sexual
harassment.  "Sexual harassment is a form of sex discrimination
prohibited by Title VII."  Heyne v. Caruso, 69 F.3d 1475, 1478
(9th Cir. 1995) (citing Meritor Sav. Bank, FSB v. Vinson, 477
U.S. 57, 65, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986)).  The
Ninth Circuit has stated:

> A plaintiff may establish a sex hostile work
> environment claim by showing that he was subjected
> to verbal or physical harassment that was sexual
> in nature, that the harassment was unwelcome and
> that the harassment was sufficiently severe or
> pervasive to alter the conditions of the
> plaintiff's employment and create an abusive work
> environment.  See Gregory v. Widnall, 153 F.3d
> 1071, 1074 (9th Cir. 1998).  A plaintiff must
> establish that the conduct at issue was both
> objectively and subjectively offensive: he must
> show that a reasonable person would find the work
> environment to be "hostile or abusive," and that
> he in fact did perceive it to be so.  Faragher v.
> City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct.
> 2275, 141 L. Ed.2d 662 (1998). . . .

Dawson v. Entek Int'l, 630 F.3d 928, 937-38 (9th Cir. 2011).

     The Complaint clearly alleges that Pheasant sexually
assaulted Plaintiff on August 26, 2009.  Plaintiff provided
testimony to that effect, [Pltf. Decl. at ¶ 3,] and Defendant's

24

declarations establish that Plaintiff reported to Uegawa that

Pheasant sexually assaulted her [Uegawa Decl. at ¶ 6; Mata Decl.

at ¶ 7].   Plaintiff's declaration also describes another incident

in which Pheasant "squeezed [Plaintiff's] two breast together

really hard[.]"  [Pltf. Decl. at ¶ 2.]  Plaintiff was "shock[ed]"

and states that the act was "humiliating and degrading[.]"  [Id.]

Defendant emphasizes Plaintiff's statements about her

relationship with Pheasant and the fact that all of the

investigations into Plaintiff's allegations reached the same

conclusion – that Plaintiff and Pheasant had a consensual

relationship and that there was insufficient evidence of assault.

Defendant essentially asks this Court to make a credibility

determination, which is inappropriate in a motion for summary

judgment.  See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083

(9th Cir. 2011) ("[C]redibility determinations, the weighing of

the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." (citation and

quotation marks omitted)).  Therefore there are genuine issues of

material fact as to whether Pheasant sexually assaulted

Plaintiff.  The alleged assaults were sufficiently severe or

pervasive to alter the conditions of Plaintiff's employment and

create an abusive work environment.

          Defendant, however, argues that, even assuming *arguendo*

that Pheasant sexually harassed Plaintiff, Defendant is still

entitled to summary judgment on Plaintiff's sexual harassment claim because Pheasant was not Plaintiff's supervisor, and therefore TSA is not liable because it did not have knowledge of the harassment prior to Plaintiff's report, and it responded appropriately to Plaintiff's report.

### 1.   **Supervisor or Co-worker**

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser.  If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions.  In cases in which the harasser is a "supervisor," however, different rules apply.  If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.  But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. [Burlington Indus., Inc. v. Ellerth, 524 U.S. 742], 807 [(1998)]; Ellerth [v. Boca Raton, 524 U.S. 775,] 765 [(1998)].  Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).  In the instant case, Defendant argues that Pheasant was merely Plaintiff's co-worker, and Plaintiff argues that Pheasant was her supervisor for purposes of her Title VII claims.

In Vance, the United States Supreme Court held that, for Title VII purposes, an employee is the plaintiff's "supervisor" if the employee "is empowered by the employer to

26

take tangible employment actions against" the plaintiff.  <u>Id.</u>

> [A] tangible employment action . . . [includes] "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Ellerth</u>, 524 U.S., at 761, 118 S. Ct. 2257.  We explained the reason for this rule as follows: "When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. . . .  A tangible employment decision requires an official act of the enterprise, a company act.  The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors."  <u>Id.</u>, at 761-762, 118 S. Ct. 2257.  In those circumstances, we said, it is appropriate to hold the employer strictly liable.  <u>See</u> <u>Faragher</u>, <i>supra</i>, at 807, 118 S. Ct. 2275; <u>Ellerth</u>, <i>supra</i>, at 765, 118 S. Ct. 2257.

<u>Id.</u> at 2442.

Plaintiff argues that <u>Vance</u> is inapposite because it does not address the situation, like the instant case, where the victim reasonably believed that the assailant was her supervisor.  The Supreme Court's analysis in <u>Vance</u>, however, forecloses the type of subjective proof of supervisor status that Plaintiff urges this Court to consider.

> Under the definition of "supervisor" that we adopt today, the question of supervisor status, when contested, can very often be resolved as a matter of law before trial.  The elimination of this issue from the trial will focus the efforts of the parties, who will be able to present their cases in a way that conforms to the framework that the jury will apply.  The plaintiff will know whether he or she must prove that the employer was negligent or whether the employer will have the burden of proving the elements of the <u>Ellerth</u>/

27

> Faragher affirmative defense.  Perhaps even more
> important, the work of the jury, which is
> inevitably complicated in employment
> discrimination cases, will be simplified.  The
> jurors can be given preliminary instructions that
> allow them to understand, as the evidence comes
> in, how each item of proof fits into the framework
> that they will ultimately be required to apply.
> And even where the issue of supervisor status
> cannot be eliminated from the trial (because there
> are genuine factual disputes about an alleged
> harasser's authority to take tangible employment
> actions), this preliminary question is relatively
> straightforward.
>
> The alternative approach advocated by
> petitioner and the United States would make
> matters far more complicated and difficult.[6]
> The complexity of the standard they favor would
> impede the resolution of the issue before trial.
> With the issue still open when trial commences,
> the parties would be compelled to present evidence
> and argument on supervisor status, the affirmative
> defense, and the question of negligence, and the

---

[6] In Vance, the plaintiff-petitioner and the *Amicus Curiae*
United States of America argued in favor of the following
analysis of whether an employee is a Title VII plaintiff's
supervisor:

> an employee, in order to be classified as a
> supervisor, must wield authority of sufficient
> magnitude so as to assist the harasser explicitly
> or implicitly in carrying out the harassment.  But
> any authority over the work of another employee
> provides at least some assistance, see Ellerth,
> *supra*, at 763, 118 S. Ct. 2257 . . . .  [T]he
> authority must exceed both an ill-defined temporal
> requirement (it must be more than "occasiona[l]")
> and an ill-defined substantive requirement ("an
> employee who directs 'only a limited number of
> tasks or assignments' for another employee . . .
> would not have sufficient authority to qualify as
> a supervisor.").

133 S. Ct. at 2449 (some alterations in Vance) (some citations
and internal quotation marks omitted).

jury would have to grapple with all those issues
as well.  In addition, it would often be necessary
for the jury to be instructed about two very
different paths of analysis, *i.e.*, what to do if
the alleged harasser was found to be a supervisor
and what to do if the alleged harasser was found
to be merely a co-worker.

Courts and commentators alike have opined on
the need for reasonably clear jury instructions in
employment discrimination cases.  And the danger
of juror confusion is particularly high where the
jury is faced with instructions on alternative
theories of liability under which different
parties bear the burden of proof.  By simplifying
the process of determining who is a supervisor
(and by extension, which liability rules apply to
a given set of facts), the approach that we take
will help to ensure that juries return verdicts
that reflect the application of the correct legal
rules to the facts.

Id. at 2450-51 (footnotes omitted).  This decision simplifies the

analysis of whether an alleged harasser is a supervisor and

renders the issue primarily a question of law and leaves no room

for the subjective definition that Plaintiff now argues.  This

Court therefore rejects Plaintiff's argument and applies the

Vance definition of "supervisor" in the instant case.

Defendant presented evidence Pheasant "had no

managerial or supervisory relationship with Marugame or any other

screener.  He had no responsibility for evaluating or

disciplining her.  He did not control her duties or work

schedule."  [Mata Decl. at ¶ 5; Def.'s CSOF at ¶ 5.]  Plaintiff

disputes this.  [Pltf.'s CSOF at ¶ 5 (citing Pltf. Decl. at ¶¶ 2,

6, 17; Sasil Depo. at 34:16-18).]  Plaintiff, however, provides

no evidence that Pheasant had hiring, firing, promotion, or significant reassignment authority over her or the ability to significantly change her benefits. She states only that: "because I know that he's a staff member I felt like I have to submit to his authority[;]" [Pltf. Decl. at ¶ 2;] according to former TSA manager Desi Sasil, "anyone who has an office at the Rice Street actually [is] a manager and they have the authority over any screener like [Plaintiff;[7]]" [id. at ¶ 17;] and there was a "play" that Plaintiff was assigned to three times a week, both before and after the assault, that is a "layer of security screening Pheasant is actually the main Supervisor and sometimes there's a play that even Pheasant himself would do the play together with the Playbook team" [id.].

None of the evidence Plaintiff presented addresses the Vance definition of a supervisor for Title VII purposes. Defendant has presented undisputed evidence that Pheasant does not meet the Vance definition of a supervisor. Even viewing the evidence in the light most favorable to Plaintiff, see Cameron v. Craig, 713 F.3d 1012, 1018 (9th Cir. 2013), there are no genuine disputes of material fact as to the issue of whether Pheasant meets the Vance definition of a supervisor. This Court therefore

---

[7] Sasil testified that Pheasant was the lead inspector and that this was a management position. Sasil, however, also testified that Pheasant only supervised one employee, Kendall Lopez. [Sasil Depo. at 24-25.]

concludes, as a matter of law, that Pheasant is considered Plaintiff's co-worker for purposes of Plaintiff's Title VII claims.

### 2.  Negligence Standard

In light of this Court's ruling that Pheasant was not Plaintiff's supervisor, in order to prove that Defendant is liable for any sexual harassment by Pheasant, Plaintiff will have to prove that TSA was negligent, i.e. TSA knew, or should have known, that Pheasant was harassing Plaintiff and failed to take adequate remedial actions.  See Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001).

Under the negligence analysis,

> If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have "adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." Faragher v. City of Boca Raton, 524 U.S. 775, 789, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).  On the other hand, an employer cannot be held liable for misconduct of which it is unaware.  See Brooks [v. City of San Mateo], 229 F.3d [917,] 924, [(9th Cir. 2000)]; see also Hostetler v. Quality Dining, Inc., 218 F.3d 798, 811 (7th Cir. 2000) ("Negligence of this nature exposes the employer not to liability for what occurred before the employer was put on notice of the harassment, but for the harm that the employer inflicted on the plaintiff as a result of its inappropriate response.").  The employer's liability, if any, runs only from the time it "knew or should have known about the conduct and failed to stop it." Ellerth, 524 U.S. at 759, 118 S. Ct. 2257; see also Brooks, 229 F.3d at 924.

<u>Swenson v. Potter</u>, 271 F.3d 1184, 1192 (9th Cir. 2001).

  **a.** <u>**Knowledge**</u>

   Plaintiff went to Uegawa's office on September 1, 2009. Plaintiff told Uegawa that she and Pheasant "were seeing each other" and she "just want[ed] to let [Uegawa] know what he did to" her. [Pltf. Decl. at ¶ 5.] According to Defendant, it was not until September 16, 2009 that Plaintiff claimed Pheasant sexually assaulted her on August 26, 2009. On September 16, 2009, Plaintiff went to Uegawa's office to inform TSA that she was filing a rape complaint with KPD. [Mata Decl. at ¶ 7; Uegawa Decl. at ¶ 6.] This Court must view the record in the light most favorable to Plaintiff. On September 1, 2009, Plaintiff reported a form of sexual harassment by Pheasant. Further, there is a genuine issue of fact as to whether or not Plaintiff reported the August 26, 2009 incident to TSA on September 1, 2009.

   Defendant presented evidence that, on August 31, 2009, Pheasant asked to meet with Mata to discuss rumors that he was having an affair with Cox. Defendant states that "[t]his was the first information Mata received to suggest that Pheasant may have been having affairs or sexual relations of any sort with other TSA employees." [Def.'s CSOF at ¶ 3 (citing Mata Decl. at ¶ 3).] Plaintiff disputes this, citing the deposition testimony of Kim Ryan-Fernandez. [Pltf.'s CSOF at ¶ 3.] Plaintiff also cites Ryan-Fernandez's deposition testimony as support for Plaintiff's

claim that TSA had knowledge that Pheasant "had something similar happen in Sacramento." [Mem. in Supp. of Motion at 4.]

The excerpts of Ryan-Fernandez's deposition testimony that Plaintiff provided with her CSOF do not support either Plaintiff's argument that Mata had notice, prior to August 31, 2009, that Pheasant was having affairs or sexual relations with female TSA employees or Plaintiff's argument that TSA had notice that Pheasant was previously involved in a similar incident at another airport. The excerpts of Ryan-Fernandez's deposition merely show that: Ryan-Fernandez heard that "there was a relationship between Mr. Pheasant and Ms. Cox[;]" she had seen them flirting with each other, but she never saw Pheasant flirting with any other employees; and the only time she saw Pheasant and Cox touch each other was one time when Pheasant was feeding Cox lunch. [Ryan-Fernandez Depo. at 34-36.] Although Ryan-Fernandez thought Pheasant's behavior with Cox was unprofessional, Ryan-Fernandez did not believe that Pheasant was a sexual predator. [Id. at 41.] The excerpts of Ryan-Fernandez's testimony which Plaintiff provided to this Court show only that Pheasant and Cox had a relationship which involved mutual flirtation. Nothing in those excerpts creates a genuine issue of material fact as to the issue of whether TSA knew or should have known, before Plaintiff reported the August 26, 2009 incident between Plaintiff and Pheasant, that Pheasant might

sexually harass one of his co-workers.  Plaintiff's CSOF did not identify any other evidence on this issue.  Cf. Local Rule LR56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties. . . .").  This Court therefore finds that the earliest TSA knew or should have known of potential harassment by Pheasant was August 31, 2009, and the earliest TSA knew that Pheasant allegedly harassed Plaintiff was September 1, 2009.

### b.   Remedial Action

There is no evidence in the record that Pheasant's alleged harassment of Plaintiff continued after September 1, 2009, but the fact that the alleged harassment stopped after Plaintiff's report does not end this Court's inquiry.  TSA had an obligation to act upon Plaintiff's allegation that Pheasant harassed her.

> In this circuit, an employer's remedial obligations are defined by Ellison v. Brady[, 924 F.2d 872 (9th Cir. 1991)].  Here, as in other circuits, "remedies should be 'reasonably calculated to end the harassment.'"  Id. at 882 (quoting Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983)).  Ellison lays out a two-part test that goes beyond short-term results:
>
> In essence, then, we think that the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment.  In evaluating the adequacy of the remedy, the

34

court may also take into account the remedy's ability to persuade potential harassers from unlawful conduct.

Id. (footnote omitted).  As the City sees it, because the harassment stopped, its response was ipso facto reasonable.

However, this analysis omits a critical step. The fact that harassment stops is only a test for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy.  Once an employer knows or should know of harassment, a remedial obligation kicks in.  Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994) (when employee is sexually harassed, the "only question is whether [the employer] is relieved of liability for [the harasser's] actions because it took sufficient disciplinary and remedial action in response to [the employee's] complaints."), cert. denied, 513 U.S. 1082, 115 S. Ct. 733, 130 L. Ed. 2d 636 (1995); [E.E.O.C. v.] Hacienda Hotel, 881 F.2d [1504,] 1516 [(9th Cir. 1989)] (holding employer liable for failure to take "prompt remedial action" once it knew of allegations).  That obligation will not be discharged until action-prompt, effective action-has been taken.  Effectiveness will be measured by the twin purposes of ending the current harassment and deterring future harassment-by the same offender or others. Ellison, 924 F.2d at 882.  If 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will attach.  Our prior cases stand for the proposition that an employer's actions will not necessarily shield it from liability if harassment continues.  E.g., Intlekofer v. Turnage, 973 F.2d 773, 780-81 (9th Cir. 1992).  It does not follow that the employer's failure to act will be acceptable if harassment stops.

Putting it another way, even if inaction through some Orwellian twist is described as a "remedy," it will fail the deterrence prong of the Ellison test whether or not the individual harasser has voluntarily ceased harassment.  Nor can inaction fairly be said to qualify as a remedy

35

"reasonably calculated to end the harassment."
Title VII does not permit employers to stand idly
by once they learn that sexual harassment has
occurred.  To do so amounts to a ratification of
the prior harassment.  We refuse to make liability
for ratification of past harassment turn on the
fortuity of whether the harasser, as he did here,
voluntarily elects to cease his activities, for
the damage done by the employer's ratification
will be the same regardless.

. . . It is the existence of past harassment,
every bit as much as the risk of future
harassment, that the statute condemns.  "Employers
have a duty to 'express[] strong disapproval' of
sexual harassment, and to 'develop [] appropriate
sanctions.'"  Ellison, 924 F.2d at 881 (quoting 29
C.F.R. § 1604.11(f)).

Fuller v. City of Oakland, 47 F.3d 1522, 1528-29 (9th Cir. 1995)

(some alterations in Fuller), *modified on other grounds by*, L.W.

v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996).

Thus, TSA had an obligation to take remedial action

after Plaintiff reported that she had been sexually harassed by

Pheasant.  Defendant emphasizes that, after Plaintiff reported on

September 16, 2009 that Pheasant had sexually assaulted her, Mata

immediately informed OI, and OI conducted an administrative

investigation of Plaintiff's claim after the conclusion of the

KPD investigation.  After the KPD investigating detective

concluded that Plaintiff and Pheasant's relationship was

consensual and that Pheasant did not sexually assault Plaintiff,

OI conducted its investigation and reached the same conclusion.

[Mata Decl. at ¶¶ 7-9.]

Assuming, for purposes of the instant Motion, that Plaintiff was sexually harassed, the fact that TSA's OI office conducted an investigation and ultimately determined that there was no harassment would not absolve Defendant from liability for the harassment.  The Ninth Circuit has stated:

> An employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have "remedied" what happened.  Denial does not constitute a remedy. Nor does the fact of investigation alone suffice; an investigation is principally a way to determine whether any remedy is needed and cannot substitute for the remedy itself. . . .

Fuller, 47 F.3d at 1529.  There is evidence in the record that, after Plaintiff reported the sexual assault and obtained a temporary restraining order against Pheasant, TSA instructed its managers that Plaintiff and Pheasant were to be kept separated. [Ryan-Fernandez Depo. at 34-37.]  Plaintiff, however, submitted testimony that TSA offered to separate them by moving her to the night shift, which she could not agree to.[8]  [Pltf. Decl. at ¶ 7.]  If TSA attempted to separate Plaintiff and Pheasant by moving Plaintiff to the less desirable night shift, that does not constitute a sufficient remedy to the harassment because an employer must remedy harassment "through actions targeted at the

---

[8] Plaintiff states that, after she served her three-day suspension, her scheduled was changed from forty hours per week on the day shift to twenty-two hours per week on the evening shift.  This meant that Plaintiff "was no longer there in the evening for [her] husband and children."  [Pltf. Decl. at ¶ 20.]

*harasser*, not the victim." <u>Fuller</u>, 47 F.3d at 1529 (citation and quotation marks omitted).

In addition, as previously noted, Plaintiff has testified that she reported harassment by Pheasant on September 1, 2009. Mata responded by instructing Plaintiff and Pheasant not to contact each other. Mata did not take any other action to separate Plaintiff and Pheasant because she determined the affair to be consensual. [Mata Decl. at ¶ 4 ("Because they both reported that this was a consensual affair and it was now ending, I asked each of them not to contact the other so they could move on and get focused on their jobs. Because both reported that the affair was consensual, and because Marugame worked at the airport, and Pheasant worked at the TSA administrative offices about two miles from the airport, I did not believe it was necessary to take any other action to separate the two.").]

Viewing the current record in the light most favorable to Plaintiff, this Court FINDS that there are genuine issues of material fact as to the issue of whether TSA took sufficient remedial action in response to Plaintiff's report that Pheasant sexually harassed her, and these issues preclude summary judgment. <u>See</u> Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

38

entitled to judgment as a matter of law"). This Court therefore DENIES Defendant's Motion as to Plaintiff's sexual harassment and hostile work environment claim.

    B.   **September 4 Statement**

        Although it is not entirely clear from the Complaint, Plaintiff appears to allege both a gender discrimination claim and a retaliation claim based upon her allegation that she was coerced into signing the September 4 Statement. According to Plaintiff, after her September 1, 2009 attempt to report the sexual assault, Mata and Uegawa "kept insisting that [she] write a statement that the sexual harassment involving Pheasant was consensual." [Pltf. Decl. at ¶ 6.] Uegawa called Plaintiff to her office on September 4, 2009, and she and Mata presented Plaintiff with a pre-written statement for Plaintiff's signature. It stated that no sexual harassment occurred between Plaintiff and Pheasant. Plaintiff initially refused to sign the statement because it was inaccurate. Plaintiff states that she "almost snapped" when Mata accused her of being in love with Pheasant. [Id.] Plaintiff states that she ultimately agreed to sign the statement because they told her that it would be insubordination if she did not sign. [Id.] Uegawa's declaration confirms that Uegawa drafted the September 4 Statement. [Uegawa Decl. at ¶ 5.] Viewing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Mata and

Uegawa coerced Plaintiff into signing a statement denying the sexual harassment that Plaintiff tried to report on September 1, 2009.

### 1.   Gender Discrimination

The September 4 Statement in and of itself, however, cannot support a Title VII gender discrimination claim.  A gender discrimination claim requires an adverse employment action.  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). For purposes of Title VII gender discrimination claims, adverse employment actions are limited to discharge or actions related to the employee's "compensation, terms, conditions, or privileges of employment[.]"  42 U.S.C. § 2000e-2(a)(1).  Even assuming, arguendo, that Mata and Uegawa coerced Plaintiff into signing the September 4 Statement, the coerced statement does not fall within the definition of adverse employment actions that can give rise to a Title VII discrimination claim.  Plaintiff cannot prove a prima facie case of gender discrimination based upon the alleged coercion of the September 4 Statement.  The Court therefore GRANTS Defendant's Motion as to Plaintiff's gender discrimination claim based on the September 4 Statement.

The Court, however, emphasizes that Plaintiff may still introduce evidence regarding the September 4 Statement in support of her sexual harassment/hostile work environment claim because such evidence is relevant to the issue of whether TSA responded

appropriately to her report of sexual harassment by Pheasant.

### 2. **Retaliation**

      Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice, such as filing a complaint alleging sexual orientation harassment and hostile work environment.  Retaliatory discharge claims follow the same burden-shifting framework described in McDonnell Douglas [v. Green, 411 U.S. 792 (1973)].  To establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two.  See Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988).  The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action.  Id.  If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996).  If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination.  See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

Dawson, 630 F.3d at 936.  In University of Texas Southwestern Medical Center v. Nassar, the United States Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e-2(m).[9]  This

---

[9] Section 2000e-2(m) states: "Except as otherwise provided
          (continued...)

requires proof that the unlawful retaliation would not have

occurred in the absence of the alleged wrongful action or actions

of the employer."  133 S. Ct. 2517, 2533 (2013).

> 42 U.S.C. § 2000e-3(a) states, in pertinent part:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his
> employees . . . because he has opposed any
> practice made an unlawful employment practice by
> this subchapter, or because he has made a charge,
> testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under
> this subchapter.

The two parts are known as the "opposition clause" and the

"participation clause".  See, e.g., Learned v. City of Bellevue,

860 F.2d 928, 932 (9th Cir. 1988).  Plaintiff bases her

retaliation claims upon the opposition clause.  [Complaint at ¶ 4

(alleging that TSA subjected Plaintiff to "reprisal/retaliation

(opposing discrimination by management)").]

> [T]he opposition clause, by its terms, protects
> only those employees who oppose what they
> reasonably perceive as discrimination under the
> Act.  An employee need not establish that the
> opposed conduct in fact violated the Act in order
> to establish a valid claim of retaliation.  [Sias
> v. City Demonstration Agency, 588 F.2d 692, 695
> (9th Cir. 1978)]  That is, an employee may fail to
> prove an "unlawful employment practice" and
> nevertheless prevail on his claim of unlawful
> retaliation.  However, the opposed conduct must

---

[9](...continued)
in this subchapter, an unlawful employment practice is
established when the complaining party demonstrates that race,
color, religion, sex, or national origin was a motivating factor
for any employment practice, even though other factors also
motivated the practice."

> fairly fall within the protection of Title VII to
> sustain a claim of unlawful retaliation. <u>Silver
> v. KCA, Inc.</u>, 586 F.2d 138, 142 (9th Cir. 1978)
> ("under the clear language of the "opposition"
> clause of [section] 704(a), a case of retaliation
> has not been made out unless the "retaliation"
> relates to the employee's opposition to a
> [section] 703 violation"); <u>see also</u> <u>Sias</u>, 588 F.2d
> at 695-96 ("[a]lthough the [district] court made
> no explicit finding that Sias' opposition was
> based on a reasonable belief that the City's
> employment practices violated Title VII, such a
> finding is implicit here") (footnote omitted).

<u>Learned</u>, 860 F.2d at 932 (some alterations in <u>Learned</u>).

Plaintiff's position is that she engaged in protected activity when she opposed sexual harassment by attempting to report to Mata and Uegawa on September 1, 2009 that Pheasant assaulted her.  Defendant argues that Plaintiff's retaliation claim based on the September 4 Statement fails because Plaintiff cannot establish that the alleged coercion of her signature on the statement was an adverse personnel action.  Defendant also contends that Plaintiff cannot show that the September 4 Statement had any impact on the investigation into the alleged sexual assault and into Plaintiff's relationship with Pheasant because, in the OI Statement, Plaintiff conceded that she and Pheasant had consensual sexual encounters.  Defendant states that Plaintiff has not claimed that the OI Statement was coerced or is inaccurate.  [Mem. in Supp. of Motion at 13-14.]

As noted *supra*, Plaintiff need not prove TSA's liability for the alleged sexual assault in order to prevail on

the retaliation claim.  See Learned, 860 F.2d at 932.  Clearly, sexual assault in the workplace is conduct that Title VII protects against.  Plaintiff need only prove that she reasonably perceived the alleged assault by Pheasant as discrimination by TSA.  Viewing the current record in the light most favorable to Plaintiff, this Court finds that there are genuine issues of material fact as to whether, when she made the report, Plaintiff reasonably perceived the alleged assault as an unlawful employment practice by TSA.

The September 4 Statement is a memorandum purportedly memorializing Plaintiff's meeting with Uegawa and Mata on September 1, 2009.  [Uegawa Decl., Exh. 2.]  Thus, but for Plaintiff initiating the meeting on September 1, 2009 to report sexual harassment, Mata and Uegawa would not have asked Plaintiff to sign a statement memorializing the meeting.

As to the second element of Plaintiff's prima facie case, adverse employment action, Defendant contends that the alleged coercion of Plaintiff's signature on the September 4 Statement does not constitute an adverse employment action.  This Court disagrees.  Title VII's anti-retaliation provision is less restrictive of the types of actions to which the prohibition applies than is Title VII's anti-discrimination provision.  42 U.S.C. § 2000e-3(a) merely states that an employer shall not "discriminate against" an employee "because he has opposed any

44

practice made an unlawful employment practice by this subchapter,
or because he has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or
hearing under this subchapter."   The Ninth Circuit has defined an
adverse employment action, for purposes of a Title VII
retaliation claim, as "any adverse treatment that is based on a
retaliatory motive and is reasonably likely to deter the charging
party or others from engaging in protected activity."   Poland v.
Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) (citation and
quotation marks omitted).

        Plaintiff has presented testimony that Uegawa coerced
her into signing the September 4 Statement with the threat that
the failure to sign the statement would be insubordination.
Threatening an employee who reports sexual harassment to sign a
statement denying the harassment that she has just reported is
treatment that is reasonably likely to deter Plaintiff and others
from reporting sexual harassment.   Further, there is enough in
the current record to create a genuine issue of fact as to
whether Uegawa had a retaliatory motive in obtaining Plaintiff's
signature on the September 4 Statement.   Viewing the evidence in
the light most favorable to Plaintiff, this Court finds that
Plaintiff has raised genuine issues of material fact as to
whether the alleged coercion of the September 4 Statement
constitutes an adverse employment action for purposes of

Plaintiff's retaliation claim.

Defendant's response to the allegation that Uegawa coerced Plaintiff into signing the September 4 Statement is essentially that the statement is an accurate account of what Plaintiff said on September 1, 2009, and only after signing the statement did Plaintiff change her mind about what transpired between her and Pheasant.  [Uegawa Decl. at ¶¶ 5-6.]  Thus, the evaluation of Plaintiff's retaliation claim based upon the September 4 Statement requires credibility determinations that are not appropriate at the summary judgment stage.  See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

This Court FINDS that there are genuine issues of material fact as to Plaintiff's retaliation claim based on the September 4 Statement which preclude summary judgment.  This Court therefore DENIES Defendant's Motion as to Plaintiff's retaliation claim based on the September 4 Statement.

### C.  **Three-Day Suspension**

Rideb suspended Plaintiff for three days without pay for unauthorized use of government property and unprofessional conduct.  Both reasons relate to her extra-marital affair with Pheasant.  [Rideb Decl., Exh. 8 (decision letter).]

Although not entirely clear from the Complaint, Plaintiff apparently alleges only a retaliation claim based upon

46

her three-day suspension.[10]  In light of the parties' arguments
in connection with the instant Motion, this Court does not
construe the Complaint as alleging a gender discrimination claim
based on the three-day suspension.  In the Motion, Defendant
characterized Plaintiff's claim based on the suspension as a
retaliation claim.  [Mem. in Supp. of Motion at 15-19.]  In the
memorandum in opposition, Plaintiff also addressed the claim
based on the suspension as a retaliation claim.  [Mem. in Opp. at
16-20.]  Although she argues that "Pheasant was allowed to resign
in good standing, move to California and become employed at the
Sacramento Airport again as a sheriff[,]" Plaintiff makes this
statement in the context of her argument that she "has met her
burden of production in producing specific and substantial
evidence that once she reported Pheasant, [TSA] began a campaign
of retaliation directed against her . . . ."  [Id. at 16.]

   1.   **Prima Facie Case**

        Defendant initially assumed, for purposes of the
instant Motion, that Plaintiff could establish a prima face case
for her retaliation claim based on her three-day suspension.
[Mem. in Supp. of Motion at 15.]  In the reply, however,

---

        [10] Plaintiff also argues that TSA retaliated against her by
reducing her weekly work hours and switching her from the day
shift to the night shift.  [Mem. in Opp. at 16.]  Plaintiff's
Complaint, however, does not contain these allegations, and
Plaintiff cannot pursue a retaliation claim based on these
allegations.

Defendant argues that Plaintiff cannot establish the newly adopted "but-for" causation requirement.  [Reply at 8-9 (citing Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013)).]

It is undisputed that, prior to her suspension, Plaintiff engaged in protected activity and that her suspension was an adverse employment action.   In order to survive summary judgment, Plaintiff must identify sufficient evidence to create a genuine issue of fact as to whether her protected activity was the but-for cause of the suspension.

While there is a genuine dispute of fact as to whether Pheasant assaulted Plaintiff on August 26, 2009 and as to whether there were some other incidents of unwelcome sexual contact, there is no dispute that Pheasant and Plaintiff were involved in a romantic relationship that was, at least in part, consensual. Pheasant apparently disclosed the relationship to Mata and others on August 31, 2009 when he discussed his alleged affairs with Darla Cox and Kendall Lopez.  [Mata Decl. at ¶¶ 3-4; Pltf. Decl. at ¶ 5.]  Plaintiff herself told Uegawa on September 1, 2009 that she and Pheasant "were seeing each other[.]"  [Pltf. Decl. at ¶ 5.]  Thus, even apart from Plaintiff's report of the alleged sexual harassment by Pheasant, TSA had knowledge of the romantic relationship between Pheasant and Plaintiff.  TSA arguably could have conducted an investigation into whether Plaintiff and

48

Pheasant misused government property during the course of their relationship based on information apart from Plaintiff's sexual harassment complaint.

Rideb, however, relied heavily on Plaintiff's OI Statement in his investigation into whether Plaintiff misused government property. Plaintiff gave the OI Statement in the course of OI's administrative investigation into Plaintiff's report that Pheasant sexually assaulted her. [Mata Decl. at ¶ 7 (stating that Mata informed OI of Plaintiff's report and asked them to open an investigation); id. at ¶ 9 (stating that OI conducted an investigation immediately after TSA received word that Kauai County would not be bringing criminal charges against Pheasant); Rideb Decl. at ¶ 3 (stating that Rideb reviewed statements that Cox and Plaintiff made to OI in the course of OI's investigation into Plaintiff's allegation).] Rideb cited Plaintiff's OI Statement in his decision letter, [Rideb Decl., Exh. 8,] and he based his preliminary conclusion that Plaintiff misused government property on her OI Statement [Rideb Decl. at ¶ 3]. After reaching his preliminary conclusion, Rideb held a pre-decision meeting with Plaintiff to inform her of his preliminary findings and recommendations. [Id.] Plaintiff challenged the preliminary findings and conclusions by writing two statements. [Id., Exhs. 6, 7.] The primary basis for the suspension came from the OI Statement. However, OI would not

have conducted an investigation, and Plaintiff would not have given the OI Statement, but for Plaintiff's report that Pheasant assaulted her.

Thus, viewing the current record in the light most favorable to Plaintiff, this Court findings that there is a genuine issue of fact as to whether Plaintiff's protected report that Pheasant sexually assaulted her was the but-for cause of her suspension.

### 2.  **Non-retaliatory Basis and Pretext**

Defendant, however, also argues that: TSA had a legitimate, non-retaliatory reason for the suspension - Plaintiff's misuse of government property during her affair with Pheasant; and Plaintiff cannot show that the reason is merely pretext.

Rideb considered all of the available evidence and ultimately concluded that Plaintiff voluntarily became involved in an extra-marital affair with Pheasant, and the affair involved romantic encounters on TSA property.  Rideb's decision letter does not mention the incident on August 26, 2009.  [Rideb Decl., Exh. 8.]  In addition, during his investigation, Rideb was not aware of Plaintiff's September 4 Statement.  [Rideb Decl. at ¶ 3.]  Rideb was not aware of Plaintiff's sexual harassment complaint until after he read the OI Statement and he asked where the statement came from.  [Rideb Depo. at 34.]  When he learned

about Plaintiff's complaint, he asked why TSA was considering disciplinary action against her.  Rideb was told there was no basis for Plaintiff's complaint and that the complaint was dropped.  Rideb testified that Plaintiff's sexual harassment complaint was not his motive for imposing the suspension.  He based his decision on what Plaintiff said she did, and he confirmed that Plaintiff had been through sexual harassment training and understood that what she was doing violated TSA rules.  [Id. at 53-54, 56-57.]  Defendant therefore has established a legitimate, non-retaliatory reason for Plaintiff's suspension.

### 3.  **Pretext**

Plaintiff argues that the stated reason for her suspension was merely pretext.  Under the McDonnell Douglas analysis, when the court examines the employer's proffered reasons for the adverse employment action, "it is not important whether they were *objectively* false . . . .  Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in original) (citation and internal quotation marks omitted).  Thus, in order to survive summary judgment, Plaintiff must identify sufficient evidence to create a genuine issue of material fact as to whether Rideb

51

honestly believed the stated reasons for the suspension.

Plaintiff points to the deposition testimony of Desi Sasil as evidence that is contrary to Rideb's deposition testimony and declarations.  Plaintiff contends that the inconsistencies show that Rideb did not honestly believe the stated reasons for Plaintiff's suspension.  According to Plaintiff, Rideb was aware of Plaintiff's sexual harassment complaint, and Rideb suspended Plaintiff at Mata's direction although Rideb did not want to suspend Plaintiff.  [Mem. in Opp. at 15 (citing Sasil Depo. at 38, 83-85).]  Desi Sasil testified that Rideb mentioned Plaintiff's sexual harassment allegation to him and told him that "they was probably going to have an inspector, some kind of inspection come now."  [Sasil Depo. at 38.]  Sasil, however, did not state when Rideb mentioned the sexual harassment allegation to him.  Thus, Sasil's testimony does not create a genuine issue of fact as to whether Rideb was aware of the allegation when he conducted the investigation which led to Plaintiff's suspension or as to whether Rideb considered Plaintiff's sexual harassment allegation in conducting the investigation.

Sasil states that Rideb told him Mata and Uegawa directed Rideb to suspend Plaintiff.  Sasil's basis for this claim was a conversation that he had with Rideb in which Rideb told him that Rideb was working on the investigation into

52

Plaintiff and Cox and that Plaintiff and Cox were "going to get written up" for their involvement with Pheasant.  [Id. at 84.] Sasil told Rideb, "[w]ell, they're victims, ain't they?" According to Sasil, Rideb responded, "[t]hat's what Shar [Mata] wants."  [Id.]  Sasil admitted that he did not remember Rideb saying anything else about being directed to do anything regarding Plaintiff, but Sasil claimed, "I know Dennis [Rideb], because we talk a lot.  He didn't want to do it, but he's following orders."  [Id. at 85.]  Even viewing the record in the light most favorable to Plaintiff, Sasil's testimony that Rideb did not want to discipline Plaintiff is mere speculation. Sasil's conversation with Rideb about the investigation, at best, shows that Rideb was personally reluctant to discipline Plaintiff and that Mata expressed her belief that Plaintiff should be disciplined.  Sasil's testimony does not call into question Rideb's honest belief that Plaintiff violated TSA rules and directives.

      Plaintiff also emphasizes Sasil's testimony that Mata and Uegawa "did not believe Plaintiff regarding Chris Pheasant[,]" as well as Sasil's testimony that "Mata expressed that whistleblowers get too much protection."  [Mem. in Opp. at 15 (citing Sasil Depo. at 80-81).]  Sasil's testimony that Mata and Uegawa did not believe Plaintiff does not create any genuine issues of material fact.  Mata's and Uegawa's disagreement with

Plaintiff's recitation of events is evident from their respective declarations in this case.  As to Mata's whistleblowers' comment, Sasil testified that it occurred in the following context:

> there was a thing with whistleblowers at another - I think a news where - that news report about whistleblowers getting protected and winning, you know, these cases.  And it so happened we had aligned one that won.
>
> [Mata] says, you know, These whistleblowers, they get too much protection.  And there was, like, really frustration in her - in her tone. She said they shouldn't have this act.  They get too much protection.

[Sasil Depo. at 81.]  Even assuming that Mata influenced Rideb's decision to suspend Plaintiff, the fact that Mata expressed disagreement with the Whistleblowers' Protection Act in response to a news report does not raise a genuine issue of fact as to pretext in this case.

Perhaps the most telling evidence which prevents Plaintiff from showing a genuine issue of fact as to pretext is the fact that Cox, who did not engage in a protected activity, received the same discipline for the same reasons as Plaintiff - a three-day suspension for unauthorized use of government property and unprofessional conduct in the course of Cox's affair with Pheasant.  [Rideb Decl., Exh. 9 (decision letter to Cox).] Further, although Plaintiff alleges that Sasil's testimony that Mata wanted Plaintiff to be suspended shows that Mata had discriminatory animus, Sasil also testified that Mata wanted both

54

Plaintiff and Cox to be suspended.   [Sasil Depo. at 163.]

Thus, even viewing the evidence in the light most favorable to Plaintiff, this Court FINDS that Plaintiff has not identified a genuine issue of fact as to whether TSA's stated reason for Plaintiff's three-day suspension was merely pretext for retaliation.   This Court therefore CONCLUDES that Defendant is entitled to judgment as a matter of law as to Plaintiff's retaliation claim based on her three-day suspension, and this Court GRANTS summary judgment to Defendant as to that claim.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Dismissal and Summary Judgment, filed April 2, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART.   The Motion is DENIED WITHOUT PREJUDICE to the extent that Defendant argues this Court should dismiss Plaintiff's claims because Plaintiff failed to contact an EEO counselor in a timely manner.

The Motion is DENIED as to: Plaintiff's sexual harassment/hostile work environment claims based upon conduct by Pheasant; and Plaintiff's retaliation claim based on the September 4 Statement.   The Motion is GRANTED insofar as this Court GRANTS summary judgment in favor of Defendant as to: Plaintiff's gender discrimination claim based on the September 4 Statement; and Plaintiff's retaliation claim based on the three-day suspension.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 28, 2013.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**NILDA C. MARUGAME V. JANET NAPOLITANO, ETC., ET AL; CIVIL NO. 11-00710 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT**